## BENITO ORTA v. THE STATE.

### No. 2621. Decided January 21, 1903.

**Murder—Self-Defense—Charge.**

On a trial for murder where defendant, as a witness, testified that the shooting was at night; that when he met deceased the latter pulled his pistol, saying, "There is the son of a bitch I've been looking for," and fired at him; and he grabbed deceased, wrenched his pistol from him and shot him with it; Held, this raised the issue of self-defense, and it was error for the court not to charge upon self-defense as requested by defendant.

Appeal from the District Court of Caldwell. Tried below before Hon. L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Atanacio Pollares, on the 6th day of October, 1895, by shooting him with a pistol. The facts attendant upon the killing are stated in the opinion.

*J. F. Carl* and *A. B. Storey,* for appellant.

*Rob't. A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for five years; hence this appeal.

The only error assigned that requires consideration is the failure and

refusal of the court to give a charge on self-defense. The court omitted to charge on this altogether, and refused the requested charge asked by appellant. However, the court charged the jury on murder in the first degree, murder in the second degree, and manslaughter. So far as is necessary to be stated, the facts attending the homicide were as follows: The State proved by one witness, Mirando, how the killing occurred. It was at night. It seems a dance was in progress at the house of Carlotta Martinez; that witness started to go home, and concluded to go by deceased's house, which was some 300 yards distant; that defendant started in that direction at the same time. Witness asked him where he was going, and he said he was going to the house of Pollares. The deceased approached them. When about ten steps from them, defendant drew a pistol and shot twice at deceased, neither of the parties saying anything. Deceased was walking slowly, with his arms folded across his breast, when defendant shot him. Deceased fell at the first shot, and died where he fell in a few minutes. Defendant ran away. Defendant himself testified that he, with other parties, left Martinez' house, where a dance was in progress, to go up to Pollares' house, some 300 yards distant, where another dance was in progress; that on the way they met deceased. "When he saw me, he pulled his pistol, saying, 'There is the son of a bitch I've been looking for,' and fired at me. I jumped and grabbed him, wrenched the pistol from him, and then shot him with his own pistol. I immediately ran off, and didn't see him any more." On this state of facts the court charged that it would constitute manslaughter, and, as stated, gave no charge on self-defense. We presume the court predicated his charge on the theory that, even on defendant's own testimony, all danger had passed, and that a killing, under such circumstances, could not be self-defense, but would be manslaughter ensuing on provocation. If we could gather from this testimony, meager as it is, that there was no question but that all danger from defendant's standpoint had vanished, then there would be no self-defense in the case. Under the authorities self-defense rests on necessity, real or apparent, and this necessity must arise from some act or demonstration transpiring at the time of the homicide. In the language of the statute: "The killing must take place while the person killed was in the act of committing the offense, or after some act done by him showing evidently an intent to commit such offense." Of course, the latter portion of this clause does not mean that one may kill his assailant after some act done by him showing an intent to kill, and after all danger had ceased; but it does mean that he can act so long as, from his standpoint, the danger is imminent, though the act which demonstrates that imminency has transpired. In this case defendant testified, and as far as the charge is concerned it must be tested by his evidence, that, without any provocation on his part, deceased as soon as he approached him, without any word, fired at him, evidently with the intent to take his life. He immediately jumped and grabbed him, and wrenched the pistol from him, and then shot him. So far as it appears, these

events followed in rapid succession. Instantly on seizing the pistol, it appears he shot deceased. This testimony, it occurs to us, unquestionably raised the issue of self-defense. To illustrate: A meets B on the street in the darkness of night. Without a word of warning A fires upon B. B immediately grabs him, and wrenches the pistol from him, and instantly shoots him down. A had already manifested his intention to kill B by shooting at him. In the darkness B could not tell or observe what other demonstrations are in progress against him. Under such circumstances, to cut him off from the right of acting instantly would be to deny him the right of self-defense. Of course, if it is taken for granted that all danger had ceased from defendant's standpoint, the killing would not be justifiable, but might be manslaughter. But a charge on self-defense, as well as on manslaughter, should have been submitted to the jury in order that they might have had the privilege of passing upon the issue in the case.

For the error of the court in failing to give a charge on self-defense, the judgment is reversed and the cause remanded.

*Reversed and remanded.*